UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BRYAN W. THURMAN and<br>EMILY M. THURMAN,<br><br>    Plaintiffs,<br><br>vs.<br><br>CASE CREDIT CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)    Case No. 1:04CV00003LMB<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

This matter is before the court on the First Amended Complaint of Plaintiffs Bryan W. Thurman and Emily M. Thurman against Defendant Case Credit Corporation ("Case Credit"), alleging defamation due to inaccurate credit reporting. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Presently pending before the court is Defendant Case Credit's Motion for Summary Judgment. (Document Number 28). Plaintiff has filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (Doc. No. 32). Defendant has also filed a Reply Brief in Support of its Motion for Summary Judgment. (Doc. No. 35). For the reasons stated herein, defendant's Motion for Summary Judgment will be granted.

## Background

Plaintiff Bryan Thurman operates a land grading business. See Deposition of Bryan

Thurman, Def's Ex. A. at 14-15 ("Bryan Depo."). Emily Thurman is Bryan Thurman's wife. See Deposition of Emily Thurman, Def's Ex. B at 8 ("Emily Depo."). Case Credit is a Wisconsin corporation that finances agricultural equipment for consumers who purchase the equipment through authorized Case dealers. See Deposition of Warren Nash, Def's Ex. C at 12-14 ("Nash Depo."). On March 12, 2002, Bryan Thurman entered into a Retail Installment Sale Contract and Security Agreement with Case Credit, Account Number 80008389722520004 ("Account Number 0004"), for the purchase and financing of a tractor. See Bryan Depo. at 21-22. On October 30, 2002, Bryan Thurman entered into a Retail Installment Contract and Security Agreement with Case Credit, Account Number 80008389722520006 ("Account Number 0006"), for the purchase and financing of a Reynolds Scraper. See id. at 31. This action, initiated in state court, concerns the timeliness of Mr. Thurman's payments on these two accounts.

Case Credit removed this action from the Circuit Court of Butler County, Missouri on January 9, 2004. (Doc. No. 1). In their Complaint, plaintiffs asserted a defamation claim against Case Credit based on its reporting of incorrect credit information. Case Credit filed a Motion to Dismiss or, in the Alternative, for a More Definite Statement. (Doc. No. 7). In this motion, Case Credit claimed that plaintiffs made no factual allegations in support of their claim and that the Complaint was so vague that it was difficult to frame responsive pleadings. Case Credit requested that the court either dismiss plaintiff's claim or direct plaintiffs to provide a more definite statement. On August 9, 2004, the undersigned dismissed plaintiff's Complaint without prejudice and directed plaintiffs to re-file their Complaint, pled with the requisite particularity. (Doc. No. 12). Plaintiffs filed a First Amended Complaint on August 23, 2004. (Doc. No. 13).

Plaintiffs' First Amended Complaint alleges that Case Credit, has "falsely, recklessly and

maliciously" reported credit information to credit reporting agencies that was inaccurate and defamatory to plaintiffs.  Specifically, plaintiffs state that in October 2002, defendant reported that account number 0004 was in a 60-day late pay status, when in fact that account was not in a late pay status.  Plaintiffs further state that in May 2003, defendant reported that account number 0006 was in a 30-day late pay status when, in fact, that account was not in a late pay status.  Plaintiffs claim that defendant communicated this inaccurate and defamatory information to the following credit reporting agencies: Equifax Information Services, LLC; Trans Union; and Experian Credit Data.  Plaintiffs contend that as a result of the reporting of the inaccurate credit information, they were denied credit arrangements by prospective lenders.  Plaintiffs also claim that as a direct and proximate result of defendant's failure to provide accurate credit information, plaintiffs' character and reputation have been lowered in the community.  Plaintiffs allege that they have suffered damages in the amount of $125,000.00.

In its Answer, Defendant Case Credit denies all of the allegations contained in plaintiffs' First Amended Complaint.  Case Credit also asserts several affirmative defenses.  First, Case Credit alleges that plaintiffs' First Amended Complaint fails to state a claim upon which relief can be granted.  Case Credit next claims that it cannot be liable to plaintiffs for disclosing truthful information to credit reporting agencies.  Case Credit also contends that it is entitled to make reports to credit reporting agencies and is insulated from liability for those reports based upon privileges granted to creditors.  In addition, Case Credit claims that any damage caused to plaintiffs was the result of their own actions.  Finally, Case Credit alleges that plaintiffs failed to sustain any damage or, in the alternative, failed to mitigate their damages as required by law.

Presently pending before the court is Defendant Case Credit's Motion for Summary

Judgment (Doc. No. 28), along with a Memorandum in Support (Doc. No. 29). Plaintiffs have filed a Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment. (Doc. No. 32). Additionally, defendant has filed a Reply Brief in Support of its Motion for Summary Judgment. (Doc. No. 35).

### Discussion

### A. Summary Judgment Standard

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. at 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. at 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has

found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 322 (quoting Fed. R. Civ. P. 1).

B.      **Defendant's Motion For Summary Judgment**

Case Credit argues in its Motion for Summary Judgment that plaintiffs do not have evidence to support each of the elements of their claim. Case Credit first alleges that it never reported any information to credit bureaus concerning Emily Thurman because Case Credit had no lending relationship with Ms. Thurman. With respect to Bryan Thurman, Case Credit claims that the statements reported to the credit bureaus were true at the time they were made. Case Credit further claims that Mr. Thurman cannot show that Case Credit acted with malice in reporting the allegedly false information and plaintiffs cannot, therefore, overcome Case Credit's qualified immunity. Case Credit thus claims that it is entitled to judgment as a matter of law.

In their Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, plaintiffs argue that Case Credit is not entitled to qualified immunity. Plaintiffs argue that, even if Case Credit is entitled to qualified immunity, plaintiffs overcome this immunity because Case Credit furnished the information with malice or willful intent to injure plaintiffs. Plaintiffs state that Case Credit's internal computer system automatically generated a late pay indicator despite the fact that plaintiffs had negotiated with a representative from Case Credit for an extended payment due date. Plaintiffs argue that whether Case Credit's use of the automated system resulted in its furnishing the erroneous information with reckless disregard for the truth is a question of fact for a jury to determine. Plaintiffs further argue that they were damaged by the

5

reporting of the inaccurate information in that the inaccurate information was used by prospective lenders and was a substantial factor in the denial of credit by lenders.

In its Reply Brief in Support of its Motion for Summary Judgment, Case Credit alleges that plaintiff's Memorandum in Opposition to Case Credit's Motion for Summary Judgment reveals that there is no genuine issue of material fact in dispute. Case Credit argues that plaintiffs ignored their obligation to come forward with evidence from the record to contradict Case Credit's Statement of Facts and that these facts are thus deemed admitted for purposes of the instant motion for summary judgment. Case Credit has restated its original Statement of Uncontroverted Facts followed by plaintiffs' responses by paragraph number, and has addressed the "new" facts asserted by plaintiffs, to demonstrate that no genuine issue of material fact is in dispute. Case Credit also argues that plaintiff's reliance on the standard of malice set forth in <u>Sullivan v New York Times</u>, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), is misplaced and that plaintiffs cannot show that Case Credit acted with malice. Thus, Case Credit contends that the undisputed facts demonstrate that plaintiffs cannot establish essential elements of their claim and that Case Credit is entitled to judgment as a matter of law.

As an initial matter, the court finds that Emily Thurman's claim against Case Credit fails, as the undisputed facts reveal that Emily Thurman was not a party to either of the sales contracts at issue and Case Credit did not report any information to credit bureaus with regard to Emily Thurman. <u>See</u> Emily Depo. at 9-12.

This court will next address Case Credit's contention that plaintiffs have ignored their obligation to come forward with evidence to contradict Case Credit's Statement of Facts. Local Rule 4.01(E) provides:

> [a] memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separate numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine issue exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

In its Memorandum of Law in Support of its Motion for Summary Judgment, Case Credit provided a Statement of Uncontroverted Material Facts consisting of 65 statements of fact in numbered paragraphs. Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment contains a section entitled "Statement of Uncontroverted Material Facts," which consists of 57 statements of facts in numbered paragraphs. A review of these statements reveals that plaintiffs have not complied with Local Rule 4.01. Plaintiffs did not address Case Credit's statements of fact and indicate whether the facts were controverted. Instead, plaintiffs created their own statements of facts, in which they adopt some of Case Credit's facts and assert some additional facts. With respect to Case Credit's facts that plaintiffs have either failed to address or have failed to controvert, these facts are deemed admitted for the purposes of summary judgment by virtue of Local Rule 4.01.

The undisputed facts reveal that plaintiffs are unable to establish essential elements of their defamation claim. A plaintiff must establish the following in a defamation claim: 1) publication, 2) of a defamatory statement, 3) that identified the plaintiff, 4) that is false, 5) that is published with the requisite degree of fault, and 6) damages the plaintiff's reputation. Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. banc 2000). A plaintiff must prove actual

damages in all defamation cases. Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 313 (Mo. banc 1993).

The Fair Credit Reporting Act ("FCRA") establishes qualified immunity for consumer reporting agencies. 15 U.S.C. § 1681h(e). See Thornton v. Equifax, Inc., 619 F.2d 700, 703 (8th Cir. 1980). A consumer may not bring a defamation action against a consumer reporting agency except as to "false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e). See Thornton, 619 F.2d at 703. The FCRA, however does not define "malice or willful intent." Case Credit reports credit information to the three major credit bureaus. As such, it is a consumer reporting agency that is entitled to qualified immunity under the FCRA.

In this case, the undisputed facts reveal that the information provided by Case Credit was not false at the time it was reported. Mr. Thurman's first payment on Account Number 0004 in the amount of $20,472.32 was due on September 1, 2002. See Bryan Depo. at 22-23, 45. Sometime at the end of August 2002, Mr. Thurman called Case Credit, spoke to a representative in the financing department, and received verbal approval for an extension of the due date on Account Number 0004 for 60 to 90 days. See id. at 24-26. Mr. Thurman agreed to make a partial payment of the amount originally due on September 1, 2002, as a condition of approving the payment extension. See id. at 26. On or about September 3, 2002, Mr. Thurman made a partial payment in the amount of $10,472.32. See id. at 45. Mr. Thurman did not receive the written Confirmation of Contract Extension on Account Number 0004, which was dated November 25, 2002, until the first week of December. See Def's Ex. 7; Bryan Depo. at 25-27, 48. The Confirmation of Contract Extension stated that the amount of $10,005.00 was due on December 1, 2002. See Def's Ex. 7. On December 9, 2002, Mr. Thurman paid, $10,010.00, the balance of the

payment due.  See Def's Ex. 8.

Mr. Thurman's first payment on Account Number 0006 in the amount of $5000.00 was due on April 30, 2003.  See Bryan Depo. at 33.  Sometime in May 2003, Mr. Thurman called Case Credit to request an extension of the original April 30, 2003 due date on Account Number 0006.  See id. at 42.  On May 21, 2003, Mr. Thurman made two partial payments towards Account Number 0006 in the amounts of $2,405.00 and $125.00.  See id. at 39-41, 108-9, 164.  Mr. Thurman received a written Confirmation of Extension, which was dated June 2, 2003.  See Pl's Ex. 11.  This Confirmation of Extension extended the due date of the payment to June 30, 2003.  See id.  On June 30, 2003, Mr. Thurman paid the remainder of the amount originally due on April 30, 2003, when he made another payment to Case Credit on Account Number 0006 in the amount of $2,525.00.  See Bryan Depo. at 41, 164.

Case Credit has an in-house computer program that automatically notifies the three credit bureaus when an account is not paid as agreed.  See Nash Depo. at 24.  If an account is not paid within thirty days, Case Credit's in-house computer program automatically generates a past-due indicator.  See id. at 24.  As a result of Mr. Thurman's payments not being made by their due dates, Case Credit's automated system notified the three major credit bureaus that Mr. Thurman had not timely made his payments on Account Numbers 0004 and 0006.  See id. at 24.  The sales contracts governing both of Mr. Thurman's accounts provide that all modifications, amendments or extensions to the terms of the notes must be in writing to be valid.  See March 2002 Sale Contract, Def's Ex. D at ¶ 12; October 2002 Sale Contract, Def.'s Ex. E at  ¶ 18.  At the time the payments on both accounts were due, Case Credit had not agreed in writing to extensions.  As such, when Case Credit's computer system notified the credit bureaus that Mr. Thurman's

9

accounts were past-due, they were in fact past-due under the terms of the sales contracts.

Further, plaintiffs are unable to demonstrate that Case Credit reported the information regarding Mr. Thurman's accounts with malice or willful intent. The Eighth Circuit addressed the issue of the meaning of "malice or willful intent" under the FCRA in Thornton. In that case, the Eighth Circuit noted that the FCRA does not define the terms "malice or willful intent to injure." See Thornton, 619 F.2d at 705. The Court stated that the standard set forth in Sullivan is an "example of a type of malice necessary to overcome a qualified privilege." Id. Plaintiffs argue that Sullivan's definition of malice-a statement made "with knowledge that it was false or with reckless disregard of whether it was false or not"-should be used in this case. Sullivan, 376 U.S. at 280, 84 S.Ct. at 726. Defendant, however, contends that the Eighth Circuit rejected this argument in Rhodes v. Ford Motor Credit Co., 951 F.2d 905 (8th Cir. 1991).

In Rhodes, the plaintiff consumer purchased an automobile from a retailer who assigned the sales contract to the defendant Ford Motor Credit Company ("FMCC"). See id. at 906. FMCC incorrectly informed a credit reporting agency that plaintiff had been delinquent on three payments. Id. This information was provided to a lending institution, which denied plaintiff credit for another automobile purchase. Id. Upon learning of its error, FMCC notified the credit reporting agency of the mistake and sent a letter to plaintiff apologizing for the error. Id. FMCC supported its motion for summary judgment with plaintiff's admission that FMCC did not act with malice or willfully intend to injure her. Id. The district court entered summary judgment for FMCC, finding plaintiff had failed to counter FMCC's submissions with evidence creating a genuine issue of fact as to the issue of malice or willful intent. Id. On appeal, plaintiff cited Thornton in support of her argument that the Sullivan definition of malice should apply, while FMCC claimed that the discussion of

10

Sullivan in Thornton was merely dicta. Id. The Eighth Circuit upheld the district court's grant of summary judgment, holding that there was no genuine issue of material fact as to whether FMCC acted with malice or willful intent. Id. at 907. The Court found that, by submitting plaintiff's admissions, FMCC met its burden of demonstrating the absence of a genuine issue of fact regarding the issue of malice or willful intent. Id. The Court declined to decide whether the Sullivan definition is the law in this Circuit with regard to the FCRA. Id. The Court stated, however, that the plaintiff failed to make a sufficient showing to avoid summary judgment even under the Sullivan definition of malice. Id.

In this case, plaintiffs have failed to counter Case Credit's submissions with evidence creating a genuine issue of fact as to the issue of malice or willful intent. In January or February of 2003, Mr. Thurman learned that Case Credit had notified the credit bureaus of his late payment status on Account Numbers 0004 and 0006. See Bryan Depo. at 54. Mr. Thurman contacted John Stewart at Nelson Tractor, the dealership from which he purchased the equipment, to request that Case Credit remove the adverse information on his credit report. See id. at 54. Mr. Stewart contacted Warren Nash, Case Credit's regional representative, and requested that Mr. Nash inquire as to whether Case Credit would remove the adverse information. See Nash Depo. at 15-16. In turn, Mr. Nash contacted Lori Johnson at Case Credit in Racine, Wisconsin and asked Ms. Johnson to check Mr. Thurman's accounts. See id. at 16-17. Case Credit agreed to remove the adverse information in light of Mr. Thurman's request for an extension of time to pay. See id. at 20-24. Ms. Johnson sent forms to the three credit bureaus to correct the past-due indicators on Mr. Thurman's account. See id. at 17.

Mr. Stewart contacted Mr. Nash again, in response to another inquiry by Mr. Thurman.

See id. at 19-20. Mr. Nash reviewed Mr. Thurman's accounts through Case Credit's internal system and discovered that the past-due indicators had been removed. See id. at 21-23. In March of 2003, Mr. Nash wrote a letter to Mr. Stewart to confirm that Case Credit had removed the past-due indicators from Bryan Thurman's account. See Def's Ex. G; Nash Depo. at 19-21. In addition, Mr. Nash offered to provide Mr. Thurman or his potential creditors with a letter to explain the information on his credit report. See Nash Depo. at 40. In January of 2003, Mark Kidd of Case Credit provided a letter to Kent Nichols at U.S. Bank to explain the information appearing on Mr. Thurman's credit report with respect to his Case Credit accounts. See Def's Ex. H; Bryan Depo. at 55-56; Emily Depo. at 17.

In June of 2003, Mr. Thurman's attorney complained to Case Credit that Mr. Thurman's credit report still contained adverse information regarding his Case Credit accounts. See William Gresham's June 2, 2003 letter to Warren Nash, Def's Ex. 1. In response, Case Credit sent another notice to the credit bureaus requesting that they remove all references to late pays for Account Number 0004 and 0006. See Def's Ex. J. Case Credit then informed Mr. Thurman that it had notified the credit bureaus to remove the adverse information. See Bryan Depo. at 63. Mr. Thurman never contacted Case Credit directly to discuss his credit report, nor did he personally contact the credit reporting companies. See id. at 58, 61.

Plaintiffs admit that they do not allege that Case Credit acted with malicious intent. See Emily Depo. at 24, Bryan Depo. at 63. When asked to describe how Case Credit acted maliciously, Ms. Thurman responded "I'm not saying that there was malicious intent, but it was–it's embarrassing." Emily Depo. at 24. Ms. Thurman further testified that "I don't know that they maliciously set out and said, okay, this is Bryan Thurman. We don't like him. We're going to

screw up his credit. I don't think that they did that. No." Id. Ms. Thurman stated that there were not any specific individuals at Case Credit who she believed were acting maliciously. Id. at 25. Mr. Thurman also testified that he did not know any individuals at Case Credit that were acting with malice. See Bryan Depo. at 62. Mr. Thurman stated that he was not aware of any malicious actions taken by any individual at Case Credit. See id. at 63.

Plaintiffs' admissions reveal that Case Credit did not act with malice in reporting the information to the credit bureaus. Case Credit has met its burden of demonstrating the absence of a genuine issue of material fact concerning whether Case Credit acted with malice or willful intent to injure plaintiffs. Plaintiffs have failed to come forward with evidence to contradict their statements in their depositions admitting that they have no evidence Case Credit acted with malice or willful intent. The facts of this case are very similar to those in Rhodes, in which the Eighth Circuit held that the plaintiff's failure to come forward with evidence contradicting their own admissions made summary judgment for the defendant appropriate. See Rhodes, 951 F.2d at 907. The undersigned finds that there is no genuine issue of material fact as to whether Case Credit acted with malice or willful intent. The undersigned further finds that plaintiffs failed to make a sufficient showing of malice even under the Sullivan standard. The undisputed facts reveal that Case Credit took every reasonable step to correct information that was true at the time it was reported. As such, the court will grant Case Credit's motion for summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Case Credit's Motion for Summary Judgment (Doc. No. 28) be and it is **granted**. A separate order of Summary Judgment will be entered on this date.

Dated this   16th   day of November, 2005.

*/s/ Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE